ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
AJAY KRISHNAMURTHY (CABN 305533)
ALETHEA M. SARGENT (CABN 288222)
ALEXANDRA SHEPARD (CABN 205143)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Eric.Cheng@usdoj.gov
    Ajay.Krishnamurthy@usdoj.gov
    Alethea.Sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) | Case No. 23-CR-00269-JSW |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT MORTEZA AMIRI'S MOTION IN LIMINE 1** |
| v. | ) | |
| | ) | |
| MORTEZA AMIRI and | ) | Pretrial: February 10, 2025 |
| DEVON CHRISTOPHER WENGER, | ) | Trial: March 3, 2025 |
| | ) | Court: Honorable Jeffrey S. White |
| Defendants. | ) | |

Defendant Morteza Amiri's motion to exclude the statements of his co-conspirators should be denied. As Amiri acknowledges, many of the statements that the United States seeks to introduce are separately admissible as statements of party-opponents. Beyond that, the United States has already provided sufficient evidence for the Court to find that statements made by codefendants Amiri, Devon Wenger, and Eric Rombough are admissible under Federal Rule of Evidence 801(d)(2)(E).

**I.    Background**

In Count One, Amiri and Wenger are charged with violating 18 U.S.C. § 241 (Conspiracy

Against Rights). The Indictment alleges that, between February 2019 and March 2022, Amiri, Wenger, and co-defendant Rombough—together with others "known and unknown" to the Grand Jury—agreed to "injure, oppress, threaten, and intimidate residents of Antioch, California . . . in the free exercise and enjoyment of rights secured to them by the Constitution or laws of the United States," and specifically, the right "to be free from the use of unreasonable force by a law enforcement officer." Dkt. 1, ¶¶ 10, 90. Among other things, the Indictment alleges that the defendants deployed force as "'punishment' to subjects beyond any punishment appropriately imposed by the criminal justice system" and agreed with each other "to carry out violent acts . . . even where the force was excessive." Dkt. 1, ¶¶ 12, 18. The Indictment also alleges that, in order to "further perpetuate the scheme," the defendants "concealed and hid . . . the acts done and purpose of the acts done in furtherance of the scheme" and "authored police reports containing false and misleading statements to suggest that the force they used was necessary or justifiable." Dkt. 1, ¶ 19.

The United States anticipates that Rombough will testify regarding the existence of the conspiracy—specifically, that Rombough "knowingly and willfully . . . agreed together with Amiri, Wenger, and other APD officers, to injure, oppress, threaten, and intimidate residents of Antioch, California . . . in the free exercise . . . of rights secured to them by the Constitution . . . that is, to be free from the use of unreasonable force by a law enforcement officer." Dkt. 239 at 3. As part of the conspiracy, Rombough "discussed plans and intentions with Amiri, Wenger, and others to deploy excessive force"; "agreed to and did" use force as "'punishment' to subjects beyond any punishment appropriately imposed by the criminal justice system"; "authored police reports that contained false or misleading statements . . . to suggest that the force [] used was necessary"; and "communicated with other APD officers, including Amiri and Wenger, after specific deployments of excessive force." Dkt. 239 at 3, 5–6.

The United States anticipates that Rombough's testimony will be corroborated by, among other things, evidence of specific instances of excessive force carried out by Amiri, Rombough, and Wenger, along with their statements in the form of text messages seized from Amiri's and Rombough's cellular phones. For instance, after a December 2019 arrest during which Amiri's canine bit R.S., Amiri and Rombough shared the following exchange:

| | | |
|---|---|---|
| AMIRI: | | the guy i bit today was proned out. No fucks given. You don't take us on a high speed and rob people and gun point and crash into cars during a football and just give up . . . bite on |
| ROMBOUGH: | | Lol agreed |

Dkt. 1 at 17.

Similarly, in August 2020, after Amiri's canine bit suspects during arrests made on the previous two days, Wenger told Amiri the following.

| | | |
|---|---|---|
| WENGER: | | We need to get into something tonight bro!! Lets go 3 nights in a row dog bite!!! |

Dkt. 1 at 19. The next day, Amiri's canine bit D.R. during an arrest (Count Four), and Amiri replied to Wenger:

| | | |
|---|---|---|
| AMIRI: | | bro we saw him laying in bed acting like he was asleep. I walked out the tent and game planned how to fuck him up. went back and did justice. wish you were there. Inside a tent with no cams . . . you would have loved it. [Law Enforcement Agency] agreed to keep cameras off. |
| WENGER: | | Bro….fuuuuuuuuuck yes!!! Fuck that nerd!! That's what fucking happens when you run, you acquire a tax. His tax was paid properly. Good shit bro. |

Dkt. 1 at 20.

## II.   Argument

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if "the statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." A coconspirator's statement may be admitted against a defendant where the prosecution shows that: (1) the conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was made in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Bowman*, 215 F.3d 951, 960-61 (9th Cir. 2000). The district court makes this determination by a preponderance of the evidence, considering "any evidence whatsoever," including the proffered statements themselves. *Bourjaily*, 483 U.S. at 175; *id*. at 180 ("We think that there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy.").

"Examples of admissible co-conspirator statements include: statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities." *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991) (citations omitted). Moreover, a statement does not need to be made to another member of the conspiracy in order to be admissible. "When a declarant seeks to induce the listener to deal with the conspirators or in any other way to cooperate or assist in achieving the conspirators' common objective, the declaration may be admissible." *United States v. Foster*, 711 F.2d 871, 880 (9th Cir. 1983) (citation omitted and alteration adopted).

The United States will seek to admit two categories of statements that may be admissible under Federal Rule of Evidence 801(d)(2)(E): (1) statements made by Amiri and Wenger, which are separately admissible as statements of a party opponent, under Federal Rule of Evidence 801(d)(2)(A) and (2) statements made by Rombough. In both cases, the statements will take the form of (a) text messages seized from Amiri's and Rombough's cellular phones; (b) statements made by Amiri, Rombough, and Wenger to other witnesses; and (c) statements made by Amiri, Rombough, and Wenger in Antioch Police Department reports.

All of these statements were made in furtherance of the conspiracy alleged in the Indictment. For instance, Wenger, Amiri, and Rombough all made statements to encourage and induce further participation, prompt further action, and keep co-conspirators abreast of their ongoing activities.[1] *See, e.g.*, Dkt. 1 at 11 ("ROMBOUGH: Liked 'exactly! blood for blood."), 22 ("WENGER:  Lets beat his fucking ass bro! I'm down after work morty."). Similarly, Amiri's, Rombough's, and Wenger's statements made in their Antioch Police Department reports are also admissible as co-conspirator statements under Rule 801(d)(2)(E). As set out above, the United States anticipates that the evidence

---

[1]   In addition to being separately admissible as statements of party-opponents, many of the statements are also admissible for non-hearsay purposes, or under one or more exceptions to the rule against hearsay. For instance, some text messages are admissible for their effect on the listener, such as to establish knowledge or notice about the declarant's actual and intended uses of force by the recipients. Others contain present sense impressions and statements of a declarant's "then existing state of mind (such as motive, intent, or plan)," which are admissible under Federal Rule of Evidence 803.

will show that the co-conspirators "authored police reports that contained false or misleading statements . . . to suggest that the force [] used was necessary." Dkt. 239 at 5–6. Thus, the statements made in the defendants' police reports furthered the conspiracy by keeping the co-conspirators' misconduct concealed from supervisory review. *See, e.g.*, *United States v. Williams*, 989 F.2d 1061, 1069 (9th Cir. 1993) (defendant's statements "represented an effort to conceal the conspirators' illegal activities, and thus was in furtherance of those activities."); *United States v. Tille*, 729 F.2d 615, 620 (9th Cir. 1984) ("When a purpose of the conspiracy is to formulate future strategies of concealment, narrations of past events may be in furtherance of the continuing conspiracy.").

Citing *Kotteakos v. United States*, 328 U.S. 750 (1946), Amiri contends that this evidence "demonstrates isolated, independent alleged actions by individuals that fail to meet the legal standard for a single conspiracy." Amiri MIL 1 at 5. This argument ignores the substantial direct evidence of Amiri's agreement. Even leaving aside Rombough's expected testimony, Amiri's and Wenger's statements and conduct by themselves establish their agreement to use excessive force. For instance, after Amiri's canine bit a suspect during the course of an arrest that involved both Amiri and Wenger, Amiri told Wenger:

> AMIRI: if [Law Enforcement Agency] didn't have all those body cams and that was us…we would have fucked him up more. He didn't get what he deserved.
>
> WENGER: I agree
> That's why I don't like body cams

Dkt. 1 at 19. Amiri's canine subsequently bit another suspect identified as D.R. (Count Four) days later, and Amiri then admitted to Wenger that he had "game planned how to fuck [D.R.] up." Dkt. 1 at 20. Wenger once again agreed: "Bro….fuuuuuuuuuck yes!!! Fuck that nerd!! That's what fucking happens when you run, you acquire a tax." Dkt. 1 at 20.

These statements, separately admissible as non-hearsay statements of a party opponent, are by themselves sufficient to establish both Amiri's and Wenger's participation in the conspiracy for purposes of Rule 801(d)(2)(E).[2] There is also sufficient evidence to establish Rombough's participation

---

[2] Amiri argues that "[c]o-conspirator statements cannot, on their own, establish the existence of a conspiracy." The Supreme Court has not so held. *Bourjaily*, 483 U.S. at 181 ("We need not decide in this case whether the courts below could have relied solely upon Lonardo's hearsay

in the same conspiracy. For starters, Rombough has already sworn during his change of plea, and agreed in his plea agreement (and is expected to testify) that he conspired with Amiri, Wenger, and others to use excessive force. *See* Dkt. 239 at 3 (Rombough "knowingly and willfully . . . agreed together with Amiri, Wenger, and other APD officers, to injure, oppress, threaten, and intimidate residents of Antioch, California . . . in the free exercise . . . of rights secured to them by the Constitution . . . that is, to be free from the use of unreasonable force by a law enforcement officer"). These admissions are corroborated by Rombough's own prior statements. For instance, after Amiri's canine bit a suspect, Amiri told Rombough that he had deployed his canine even though the suspect had been "proned out" because suspects were not permitted to "take [the police] on a high speed [chase] and rob people . . . and crash into cars . . . and just give up." Dkt. 1 at 17. Rombough replied: "Lol agreed." Dkt. 1 at 17. *See also* Dkt. 1 at 11 ("Me too and exactly I'm gonna fuck someone up and hopefully get you a bite."), Dkt. 1 at 13 ("He sprawled out but if you were there we would have gotten u a bite."). Because "there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy," *Bourjaily*, 483 U.S. at 180, this is more than sufficient to establish all three defendants' participation in the conspiracy.

      Finally, Amiri objects to "text messages from non-parties to Mr. Amiri," arguing that "there is no evidence linking them to the conspiracy." Amiri MIL 1 at 6. But many of those statements are—at the very least—admissible for non-hearsay purposes, or under one or more exceptions to the rule against hearsay, such as the exceptions for present sense impressions or statements of then-existing state of mind. *See* Fed. R. Evid. 803(1), (3). In the exchange set out below, for example, the statements of another officer present when Amiri's canine bit D.R. (Count Four) should be admitted for the non-hearsay purpose of providing context for Amiri's subsequent admissions:

| | |
|---|---|
| Officer: | Good job bro. Glad you got your bite and thanks again for the help |
| AMIRI: | hell yeah you guys handed me a perfectly setup bite |
| Officer: | Fasho! |

---

statements[]."). In any event, this contention misunderstands the nature of his own statements: they are non-hearsay admissions of a party opponent. Fed. R. Evid. 801(d)(2)(A).

Because the admissibility of these non-party statements to Amiri will depend on the specific circumstances of the statement, the United States respectfully requests that the Court defer ruling on these types of statements until they are offered during the course of trial.

### III. Conclusion

For the foregoing reasons, Amiri's motion in limine should be denied.

DATED: January 22, 2025    Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
ERIC CHENG
AJAY KRISHNAMURTHY
ALETHEA SARGENT
ALEXANDRA SHEPARD
Assistant United States Attorneys