UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MORTEZA AMIRI and DEVON CHRISTOPHER WENGER,<br><br>Defendants. | Case No. 23-cr-00269-JSW-1, 3<br><br>**ORDER GRANTING MOTION FOR MISTRIAL; GRANTING MOTION TO SEVER**<br><br>*UNDER SEAL* |

Now before the Court is Defendant Devon Wenger's oral motion for a mistrial. The Government opposes the motion. Defendant Morteza Amiri does not oppose Mr. Wenger's motion but moves for severance so that his trial may proceed without interruption. The Court has considered the arguments of counsel, relevant legal authority, the record in this case, and the Court's own observations during the course of trial. The Court HEREBY GRANTS the motion as to Mr. Wenger and SEVERS the trial as to Mr. Amiri so that the trial as to Mr. Amiri may proceed without delay.

**BACKGROUND**

**A.    Procedural History.**

Mr. Wenger was indicted alongside Mr. Amiri and Eric Rombough in August 2023. (Dkt. No. 1.) Ms. Nicole Lopes appeared as counsel for Mr. Wenger in May 2024. (Dkt. No. 100.) Mr. Wenger was also indicted in a related case, *United States v. Wenger*, 23-cr-268-JSW (the "Related Case.")

The Court set an original trial date of February 17, 2025, which it moved to February 18, 2025 to account for the holiday. (*See* Dkt. Nos. 91, 92.)

Ms. Lopes vigorously and effectively represented Mr. Wenger through numerous pretrial

1   motions. (*See* Dkt. Nos. 109, 153, 161, 176, 181, 182, 185, 186, 187, 197, 207, 209, 213, 221,
2   265, 266, 267, 268.)

3   In the Related Case, the Court *sua sponte* invited Mr. Wenger's counsel to state in a joint
4   filing to both cases whether a continuance of trial would be appropriate in the Related Case. (*See*
5   Related Case, Dkt. No. 124 ("Defendant shall state in his brief whether he believes a continuance
6   of the trial date in the -268 case is necessary.").) Ms. Lopes used the joint filing to request a
7   continuance in this action as well. Ms. Lopes did not state how much additional time she needed,
8   but she provided the Court with a table showing her upcoming trial schedule. (Dkt. No. 213, at
9   13-14.)

10  The Court agreed that a brief continuance was appropriate given the issues raised by Ms.
11  Lopes, and it selected a date that did not conflict with her trial schedule to reset the instant trial.
12  (Dkt. No. 215.) The Court issued an order to show cause why the dates selected by the Court
13  would not be acceptable. (*Id.*) Mr. Amiri and the Government consented to the schedule, but Mr.
14  Wenger did not. (Dkt. No. 221.) Mr. Wenger contended that the Government was engaged in a
15  pattern of late production of discovery, that Mr. Wenger needed more time to engage expert
16  witnesses, and that the new trial date would conflict with trials in Ms. Lopes' other cases. (*Id.*)
17  The Court found Ms. Lopes' objections to be without merit. (Dkt. No. 223.)

18  In January 2025, the Court received notice that Mr. Wenger had filed a *pro se* appeal of an
19  interlocutory order to the Ninth Circuit. (Dkt. No. 243.) The Court also noted that Mr. Wenger
20  had not filed any motions *in limine* or objections to the Government's exhibit list. Concerned that
21  those events might bear upon Ms. Lopes' preparation for trial, the Court ordered Ms. Lopes to file
22  a statement regarding "any information that the Court needs to know that could impact the trial in
23  this case." (Dkt. No. 286.) The Court further ordered Ms. Lopes to serve the order and her
24  response thereto on Mr. Wenger. (*Id.*)

25  Ms. Lopes filed a response stating that the choices to not file motions *in limine* or
26  objections were strategic, and that the appeal was intended to preserve Mr. Wenger's rights. (Dkt.
27  No. 293.) Ms. Lopes did not state that she would be unable to prepare for or proceed to trial. (*See*
28  *id.*)

Ms. Lopes appeared at the pretrial conference on February 10, 2025. Ms. Lopes was proactive and raised an objection relating to the Court's slideshow and to the statement of the case to be read to the jury. Ms. Lopes did not state that she was unable to prepare for or proceed to trial.

Jury selection proceeded as scheduled on February 26, 2025. Trial began on March 3, 2025.

On March 4, 2025, while the jury was absent, Ms. Lopes raised a complaint regarding the Government's belated production of discovery. The Court informed Ms. Lopes that it could not respond to generalities, and it asked Ms. Lopes to file a motion by 7:00 a.m. on March 5, 2025 setting forth specific details so that the Court could properly consider the issue. Ms. Lopes responded with a comment that she would likely be unable to meet the deadline because she was the only attorney assigned to the case.

The Court subsequently issued an order to Mr. Bill Seki, or the current managing partner of Seki Nishimura & Watase LLP, requiring an explanation as to why Ms. Lopes did not have adequate support and a statement setting forth "what additional support the firm will be providing for the remainder of the trial." (Dkt. No. 344, at 2.) Mr. Seki responded with a declaration stating that "the firm has made available and will continue to make available all the administrative support needed by Ms. Lopes." (Dkt. No. 345, at ¶ 8.)

The Court found Mr. Seki's declaration to be unhelpfully vague, and it issued a second order requiring Seki Nishimura & Watase LLP to be prepared to discuss the specific additional help it had provided to Ms. Lopes. (Dkt. No. 346.) Mr. Seki responded with another declaration committing a paralegal to attend trial on March 5, 2025 and an associate to attend trial during the week of March 10, 2025. (Dkt. No. 347.)

The morning of March 5, 2025, Ms. Lopes made a request to speak with the Court in chambers. The Court denied the request, but it permitted Ms. Lopes to address the Court in a sidebar with Government counsel present. Ms. Lopes then moved for a mistrial.

The Court briefly adjourned, sealed the courtroom, and resumed proceedings with all counsel and all parties present. Ms. Lopes then made her motion so that all parties, including Mr.

Wenger, could hear and participate. The Court solicited the position of Mr. Wenger, the Government, and Mr. Amiri. The Court further asked counsel for Mr. Amiri, pursuant to his duties as an officer of the Court, to provide his opinion on whether Ms. Lopes would be able to continue in the trial.

**B.      Ms. Lopes' Representations to the Court.**

Ms. Lopes represented to the Court that she is not able to continue effectively representing Mr. Wenger.

Ms. Lopes stated she suffers from depression, anxiety, post-traumatic stress disorder, and ADHD, which affect her ability to function even when treated with medication. Adequate rest is important to balance Ms. Lopes' conditions so she may be an effective advocate, and Ms. Lopes has slept only five hours since the trial began.

Ms. Lopes states that when she accepted Mr. Wenger's case, she asked for and her law firm provided a junior associate to serve as a second chair. Ms. Lopes was aware that other attorneys had turned down Mr. Wenger's case due to the resources it would require, but she believed at the time that her law firm would provide sufficient resources. The firm subsequently removed the second chair, and Ms. Lopes was afraid to tell the partners that she would not be able to handle the case on her own.

In December 2024, Ms. Lopes told her firm that she needed additional help because of the size of the case. The firm declined to provide a second chair or other assistance. Ms. Lopes' legal assistant has not made filings, served subpoenas, or organized exhibit binders as promised in the case, despite Ms. Lopes raising the issue with the managing partner. Two Los Angeles Police Department officers volunteered to help Ms. Lopes make up her exhibit binders over the weekend after the law firm failed to do so. Ms. Lopes has also had a non-attorney friend volunteer to sit in the gallery during the trial and take notes because Ms. Lopes has no administrative support. Mr. Wenger provided input and administrative support during the jury selection process instead of someone from Seki Nishimura & Watase LLP.

Ms. Lopes was unable to review the documents produced in discovery prior to trial. She has also been unable to review witness statements prepared by the Government on the eve of trial.

Ms. Lopes has forgotten the contents of discovery, which she read in the past, because she has no second chair to help organize and review documents for trial.

According to Ms. Lopes, the assistance offered by Ms. Lopes' employer in response to the Court's order is too little, too late. The law firm offered to send a legal assistant with no criminal experience and with whom Ms. Lopes has no familiarity. The firm would not make another attorney available until the next week.

Ms. Lopes stated that she made the mistrial motion at great personal risk and cost. Ms. Lopes anticipates losing her employment and being blacklisted from further police officer-involved cases. Even so, Ms. Lopes believes mistrial is necessary because she cannot effectively assist Mr. Wenger.

### C.   Mr. Wenger's Representations to the Court.

The Court informed Mr. Wenger about the double jeopardy implications of a voluntary defense motion for a mistrial. The Court instructed Mr. Wenger to take time to think about what he would like to do.

Mr. Wenger stated that, given the opportunity to reflect alone and with advice of counsel, he agrees that Ms. Lopes will not be able to effectively assist him with the remainder of the trial. Mr. Wenger knowingly and voluntarily assented to Ms. Lopes' request for a mistrial. Mr. Wenger believes Ms. Lopes would have been competent but for the lack of support from Ms. Lopes' employer.

### D.   The Position of the Other Parties.

The Government objected to a grant of mistrial. Speaking for the Government, Assistant United States Attorney Ajay Krishnamurthy agreed with the Court that, thus far, Ms. Lopes has adequately represented her client. He stated that mistrial is premature because Mr. Wenger has not suffered any prejudice. He suggested an adjournment until March 7, 2025 so that Ms. Lopes could rest and prepare for trial.

Attorney Paul Goyette, on behalf of Mr. Amiri, stated that he reluctantly believes Ms. Lopes would not be capable of continuing the trial even with a brief break. Mr. Goyette stated that he has grave concerns given his and his co-counsel Janelle Crandell's interactions with Ms. Lopes

that Ms. Lopes cannot fulfill her duty of competence to her client. He further stated that Ms. Lopes' continued participation in the trial would prejudice Mr. Amiri.

Mr. Goyette stated that continuing the trial as an alternative remedy would prejudice Mr. Amiri. The charges at issue have been hanging over his head since August 2023. Mr. Amiri is unable to make future plans given the uncertainty of the outcome at trial. Mr. Amiri and his counsel have expended significant financial resources that would need to be duplicated if he is required to select another jury and redo the first two days of presentation.

### E.     The Court's Observations.

The Court has personally observed Ms. Lopes' behavior escalating throughout the course of the proceedings. Ms. Lopes has appeared increasingly emotionally distraught, and at times she has wept in the courtroom. This emotional distress seemed to reach a climax in the Court's sidebar discussion with Ms. Lopes, in which the Court observed that Ms. Lopes was bordering on hysteria, physically shaking, crying, and having difficulty speaking.

The Court has further observed the effects of Ms. Lopes' lack of sleep on her presentation during the trial. Ms. Lopes has repeatedly apologized and made self-deprecating comments while questioning witnesses or addressing the Court. Her cross-examinations have been meandering and repetitive. She often appears to be engaged in a stream of consciousness when she addresses the Court or in her preambles to witness questions.

Ms. Lopes has made unfounded representations to the Court regarding conduct of Government counsel as a result of Ms. Lopes' inability to review and assimilate documents produced by the Government. This includes an accusation on March 4, 2025 that the Government violated its *Brady* obligations by failing to produce certain documents which Mr. Goyette confirmed defense counsel had received.

Further, Ms. Lopes has been unable to comply with Court deadlines. Ms. Lopes has not arrived by 7:30 a.m. as ordered throughout the course of the trial. She was not able to comply with the Court's deadline of 7:00 a.m. on March 5, 2025 to file a *Brady* motion. She did not timely file a response to the Court's order requesting an updated joint statement of the case, and she (along with the other parties) did not timely file a joint list of recommended pre-excusals prior

to jury selection.

It is clear to the Court that Ms. Lopes has not been able to keep up with the pace of trial. The Court's concern that Ms. Lopes was overwhelmed prompted the Court to direct Ms. Lopes' law firm to provide additional administrative support. Following the motion this morning, the Court agrees that the additional assistance promised by Ms. Lopes' firm and a brief adjournment to March 7, 2025 will not remedy this issue.

**ANALYSIS**

**A.     Applicable Legal Standards.**

The Sixth Amendment guarantees criminal defendants the right to a speedy trial with representation by effective counsel. U.S. Const. amend. VI. Counsel is ineffective if their performance falls "below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

The Fifth Amendment protects defendants from being tried twice for the same crime. U.S. Const. amend. V. However, jeopardy does not attach to prevent retrial after a mistrial "if, all factors considered, there is either (1) 'manifest necessity' for the discharge of the original proceedings, or (2) 'the ends of public justice' would otherwise be defeated." *Arnold v. McCarthy*, 566 F.2d 1377, 1386 (9th Cir. 1978). Where the defendant seeks a mistrial, the Court need not find "manifest necessity"; the general rule is that the Double Jeopardy Clause "is no bar to retrial." *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). A "narrow exception" exists only where the prosecution "goads" the defendant into seeking a mistrial. *Id.*

Severance of trial of co-defendants may be granted within the discretion of the trial court. *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). When determining whether to sever defendants, courts consider the prejudice to defendants if they were to proceed in a joint trial. *Id.* at 539.

**B.     The Court Finds a Mistrial Is Necessary as to Defendant Wenger in the Interest of Justice.**

Mr. Wenger's motion was made by his counsel, with Mr. Wenger's consent. The Court finds that the Government neither contributed to the motion nor goaded Ms. Lopes into moving

for a mistrial.

The Court finds that, although the manifest necessity standard does not apply in these circumstances, manifest necessity exists. Ms. Lopes' emotional state and administrative capacity is such that she is not competent to effectively represent Mr. Wenger for the remainder of the trial. The Court finds that Ms. Lopes' conduct falls below an objective standard of reasonableness.

The Court considered alternatives to mistrial and finds that none would adequately protect Mr. Wenger's rights. The Court solicited additional administrative support from Ms. Lopes' firm, but Ms. Lopes represented that the extra help would not make her representation more effective. The Court considered the Government's recommendation to adjourn for two days to enable Ms. Lopes to prepare for trial, but it finds that Ms. Lopes' mental and physical health is too impaired for a brief adjournment to resolve the issue.

The Court further finds that Mr. Wenger would be prejudiced by substitution of counsel mid-trial. The volume of discovery in this case makes such a substitution impossible; the Government's exhibit list alone exceeds 900 exhibits. No attorney could substitute in for Ms. Lopes and adequately prepare without significant delay. *See United States v. Cronic*, 466 U.S. 648, 659-60 (1984) (holding denial of counsel "may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate"); *United States v. Bell*, 795 F.3d 88, 116 (D.C. Cir. 2015) (Wilkins, J., concurring) (suggesting rule that "when defense counsel is incapacitated mid-trial through no fault of the defendant, and no replacement attorney is available who observed the testimony of key government witnesses against the accused and participated in material consultations with the defendant, the Constitution requires a mistrial.").

The Court additionally finds that the ends of justice are served by a mistrial as to Mr. Wenger. Proceeding through trial with ineffective assistance of counsel is unfair to Mr. Wenger, risks spillover prejudice for Mr. Amiri, wastes the jury and the Government's time, and undermines the public's rights as enshrined within the Sixth Amendment. Public justice requires a mistrial.

**C.     The Court Severs the Trial of Defendant Amiri from the Trial of Defendant Wenger.**

Mr. Amiri moves to sever so that he may proceed with trial. The Court exercises its discretion to grant the motion.

The Court finds that Mr. Amiri would be unduly prejudiced by further delay in his trial. The Court agrees that delay risks violating Mr. Amiri's right to a speedy trial. The Court further finds that delay would prejudice Mr. Amiri given the significant resources he has expended in the trial to date.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for a mistrial as to Mr. Wenger and SEVERS the trial as to Mr. Amiri. Trial as to Mr. Amiri will resume as scheduled tomorrow, March 6, 2025, at 8:00 a.m.

Ms. Lopes and Mr. Wenger do not need to attend the remainder of the trial. The Court will set a status conference as to Mr. Wenger following the conclusion of Mr. Amiri's trial in this case.

**IT IS SO ORDERED.**

Dated: March 5, 2025

_____
JEFFREY S. WHITE
United States District Judge