SEKI, NISHIMURA & WATASE, PLC
BILL H. SEKI (SBN 137045)
bseki@snw-law.com
600 Wilshire Boulevard, Suite 1250
Los Angeles, California 90017
Tel.: (213) 481-2869 | Fax: (213) 481-2871

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEVON CHRISTOPHER WENGER,<br><br>Defendant. | Case No.: 4:23-CR-00269-JSW-3<br><br>(Hon. Jeffrey S. White)<br><br>**DECLARATION OF BILL H. SEKI PURSUANT TO COURT ORDER OF MARCH 25, 2025** |

**TO THE HONORABLE COURT:**

I, BILL H. SEKI, declare as follows:

1. I am a Partner with the law firm Seki Nishimura & Watase, PLC ("Firm"). I am licensed to practice in the state of California. The facts stated in this declaration are based on my personal knowledge. Accordingly, I submit this declaration based upon such knowledge, unless stated upon information and belief.

2. On March 25, 2025, this Honorable Court ordered me to "review the statements that Ms. Lopes made in favor of the mistrial and to submit a declaration to the Court regarding the Firm's position on these statements." (Transcript Status Conference Order to Show Cause, March 25, 2025, Page 6, lines 5-8.) This Declaration is prepared in compliance with the Court's order.

3.    In preparation for this Declaration, Firm emails, text messages, phone logs, billing and accounting information were retrieved and reviewed. All references to "Transcript" are to *United States of America v. Morteza Amiri and Devon Wenger*, Trial Transcript, March 5, 2025, Volume 4, pages 708-874. (Transcript unsealed by Court Order, March 24, 2025.)

4.    **Ms. Lopes stated to the Court that I asked her if she wanted to represent Wenger.** (Transcript Page 745, line 17 – Page 746, line 1.)

On or about May 23, 2024, I was approached by the Legal Defense Fund (LDF) and asked if I would be willing to take on Mr. Wenger as a client. I declined for two reasons. First, I did not want to take on a case in the Northern District. Second, I was not admitted to the Northern District at the time. I had let LDF know that I would look for other attorneys in the Los Angeles Area who might be willing to take on the case. I asked Ms. Lopes to assist me in reaching out to possible attorneys. After reaching out to possible attorneys, Ms. Lopes approached me and stated that she wanted to take the case. We discussed the time commitment for a case like this, the travel involved and prospect of trying a case in the Northern District, and the limited resources we had available should the case go to trial. Ms. Lopes assured me that she was capable of handling the case and she begged to take the case. Furthermore, I was unaware that other firms had been approached to take the case and turned down the case because it would take up too much of their time and resources. To this day I have never heard this information regarding firms turning down the case other than Ms. Lopes' statement on the record. I was only aware that most of the firms approached by LDF in northern California were unable to take the case due to representation conflicts.

5.    **Ms. Lopes stated to the Court that the Firm provided an associate to act as her second chair on the Wenger case**. (Transcript page 714, line 6-18; page 725, line 17-19.)

At no time did the Firm ever commit to provide a full time second chair for Ms. Lopes. I am informed and believe that Ms. Lopes asked for associate Mark Montellana to be assigned to her full-time to assist her on **all** of her cases. Mr. Montellana was already assigned to a Firm partner to work on County of Los Angeles cases. Mr. Montellana's case load was approximately 60 cases at that time. I am informed and believe that Ms. Lopes was informed by the Firm's managing partner that Mr. Montellana could assist her from time to time with responding to motions and other tasks related to the Wenger case. Additionally, Mr. Montellana and Ms. Lopes were instructed to first get permission from Mr. Montellana's assigned supervising partner before engaging in work for Ms. Lopes. A review of Firm billing indicates Mr. Montellana worked on some specific tasks on the Wenger matter in June 2024 (10.5 hours), in August 2024 (2.3 hours), in October 2024 (9.9 hours) and November 2024 (48 hours). I am aware that Mr. Montellana was not approved as a biller by LDF until late October of 2024. Mr. Montellana assisted Ms. Lopes with various tasks related to the Wenger case up through November 2024. Thereafter, I am informed and believe that Ms. Lopes did not request either Mr. Montellana, his assigned supervising partner, or the Firm's managing partner (all of whom are willing to submit their declaration of this fact to the Court should the Court deem such to be necessary) the assistance of Mr. Montellana with any work on the Wenger case. Mr. Montellana was available if requested. He was never removed from working on the Wenger case. Mr. Montellana was never denied the ability to assist Ms. Lopes by the supervising partner to whom Mr. Montellana reported. It was never discussed that he would be participating in the trial as a second chair. It should be noted that Mr. Montellana billed 1548 hours of work on all of his cases during the period of May 24, 2024, through March 3, 2025 (the date the Wenger case was first assigned to Ms. Lopes until the trial commenced). Ms. Lopes also stated to the Court that she had "begged them for months to give me

back a second chair." (Transcript page 718, line 13-14.) Ms. Lopes did not beg or even requested to have a second chair returned. That simply did not happen.

Ms. Lopes further stated to the Court, "In this case he was to do some substantive work, review discovery, maybe take a witness or two, help me write motions. It was - - it was and even then I got a lot of blowback . . ." (Transcript page 725 line 24 – Page 726 line 2) This conversation never occurred with either Mr. Montellana, his assigned supervising partner or the Firm's managing partner, or with anyone else to the knowledge of either myself or the Firm. The management of the Firm was not aware that Mr. Montellana was going to be participating in the Wenger trial. He did help with motions, but there was never a discussion about him taking a role beyond what has been previously discussed.

6. **Ms. Lopes stated to the Court that in December 2024, she approached the Firm's Managing Partner to let him know she needed more help and that she was berated and yelled at**. (Transcript page 734, Line 13-page 735, line 5; page 732, line 12-16.)

I am informed and believe that the scenario described by Ms. Lopes that allegedly occurred in December 2024 never occurred. At no time was she ever berated or yelled at by any partner in the Firm.

From the time that Ms. Lopes began working on the Wenger matter at the end of May 2024, we would be updated on the progress of the case. In an email dated November 11, 2024, Ms. Lopes asked for assistance on her other matters / cases assigned to her so that she could focus her efforts on preparation for Wenger. As a result of this request, Ms. Lopes' case load was reduced to allow her to spend a majority of her time on Wenger. A review of the Firm's billing records shows that Ms. Lopes billed a total of 87.3 hours on all other cases excluding Wenger from November 1, 2024, through the commencement of the Wenger trial. It should be noted that those same billing records show that only 7 hours of the 87.3 hours were spent on County of Los Angeles civil rights litigation matters (all 7 hours were billed in November of 2024 and none thereafter). I am informed and believe that

Ms. Lopes was encouraged to focus her time on Wenger and that she advised the Firm that she was reviewing discovery almost daily and preparing for trial. It was believed by me and the Firm's managing partner that she was efficiently using her time to prepare the case for trial.

As stated above, the scenario described by Ms. Lopes that allegedly occurred in December 2024 never occurred. At no time was she ever berated or yelled at by any partner in the Firm. I did not perceive the dynamics change between Ms. Lopes and any partner.

7.  **Ms. Lopes stated to the Court that she was not provided administrative support by the Firm. She further alleged that subpoenas and trial binders were not prepared for her.** (Transcript page 728, line 18 – page 730, line 8; page 735, line 14-20)

Again, these statements by Ms. Lopes are not accurate. Ms. Lopes relied heavily upon her legal assistant to ensure that she was aware of all deadlines related to Wenger. In July 2024, with her knowledge, all Ms. Lopes' emails were forwarded to her legal assistant to ensure that all events were calendared and that she could be sent reminders of upcoming deadlines. Upon review of Firm records, including emails and text messages, Ms. Lopes' legal assistant identified any calendaring conflicts/issues and helped to resolve them. Furthermore, Ms. Lopes was reminded of all deadlines related to the Wenger case. Prior to trial, Ms. Lopes' legal assistant asked Ms. Lopes what she needed for trial, including asking her what she needed for her trial binders. I am informed and believe that Ms. Lopes did not respond to the requests from her legal assistant regarding the preparation of trial/witness binders, based upon my review of the Firm's emails and text messages, and information obtained from Ms. Lopes' legal assistant. The day before trial was to start, Sunday, March 2, 2025, at approximately 3:00 PM, Ms. Lopes reached out for help with her trial binders. This was the first time that Ms. Lopes had responded to her legal assistant regarding the preparation of binders. Both her legal assistant and

I indicated we would come to the office to help her. Ms. Lopes told both of us that she did not need our help and had it taken care of.

Regarding subpoenas, I am informed and believe, based upon a review of Firm documents, specifically emails, texts and phone logs, that the subpoenas requested by Ms. Lopes were in fact prepared and returned to her for review on February 26, 2025. The communications and timeline related to the Wenger subpoenas are as follows: on February 21, 2025, Ms. Lopes legal assistant asked in an email to Ms. Lopes for direction on what specifically was needed for the subpoenas. On February 26, Ms. Lopes emailed her legal assistant, me and the Firm managing partner asking about the subpoenas. The Firm managing partner emailed Ms. Lopes that the subpoenas would be "taken care of". Within one hour of the managing partner emailing Ms. Lopes, the subpoenas were emailed to Ms. Lopes by her legal assistant (both I and the Firm's managing partner were copied on the February 26, 2025, email where Ms. Lopes was originally sent the subpoenas). On February 27, 2025, Ms. Lopes again requested the subpoenas. Ms. Lopes was informed by the managing partner and the Firm's office manager that the subpoenas had been sent to her on February 26, 2025. Ms. Lopes indicated that she had not reviewed that email due to the large number of emails in her in-box and requested the subpoenas be sent to her again. Ms. Lopes' legal assistant, the office manager and the Firm managing partner were in communication with Ms. Lopes to ensure that the subpoenas were sent to her again in a timely manner on February 27, 2025, to be served by her investigator, and the Firm was informed that in fact all subpoenas were served.

8. **Ms. Lopes stated to the Court that a partner resigned from the Firm on Christmas Eve.** (Transcript page 713, line 23-page 714, line 3.)

The partner gave notice of her leaving the Firm on December 18, 2024. She did not leave the Firm until January 31, 2025. An experienced trial attorney had been hired during October 2024 but did not start work at the Firm until December

2, 2024. None of this affected Ms. Lopes' case load or her work on Wenger as demonstrated by Ms. Lopes' own billing records for that period of time (Ms. Lopes only billed a total of 87.3 hours on all other cases excluding Wenger from November 1, 2024, through the commencement of the Wenger trial, and a total of 260.7 hours on all cases during that period, including Wenger). The departing partner did not work on criminal cases or Wenger, and Ms. Lopes was never requested or required to pick up any additional assignments as a result of that partner leaving the Firm. To the contrary, I am informed and believe the Firm managing partner advised Ms. Lopes to concentrate solely on Wenger, as described above.

    9.    **Ms. Lopes stated to the Court that the Firm made her work on high profile civil rights cases and that she was overworked with two complicated trials, the Houseton (Trevor Kirk) case and the Wenger matter, as well as other civil rights cases.** (Transcript page 727, line 22-25; page 728, line 1-17; page 735, line.)

Prior to being retained on Wenger, Ms. Lopes agreed to assist a senior attorney with her civil rights cases. Contrary to Ms. Lopes' representation that the Firm was "desperate", her working on civil rights cases was a way to increase Ms. Lopes billing which was substantially below average (a review of the Firm's accounting records show the Firm has not yet profited from Ms. Lopes employment and continues to run at a deficit based on her costs to the Firm compared to the gross revenue she has generated for the Firm). A review of Firm billing indicates that once Wenger was assigned to Ms. Lopes by LDF at the end of May 2024, she billed a total of 43.8 hours on the County civil rights cases (including the Houseton case) up to the Wenger trial. While Ms. Lopes was originally assigned as co-counsel for Houseton, she was removed by the Firm from Houseton in mid-December 2024. A review of Ms. Lopes' time entries and billing records disclose that from the time Ms. Lopes was retained for Wenger in May 2024, she billed a total of 17.8 hours on Houseton and did not bill on Houseton after October 2024. Additionally, Ms.

Lopes stated to the Court that she tried the Trevor Kirk case which was the criminal case based on the same facts in Houseton. (Transcript page 732, line 2-3.) Ms. Lopes did not try the criminal case, which was tried in February 2025 by another attorney not employed by my Firm.

10.  **Ms. Lopes stated to the Court that she is usually in court every morning and does an internal affairs interview in the afternoon.** (Transcript page 750, line 12-15.)

A review of the Firm calendar for Ms. Lopes indicates that from November 1, 2024, to February 28, 2025, Ms. Lopes appeared in court on 22 days. Of those 22 days, Ms. Lopes had internal affairs interviews on the same day on 12 occasions. During the same time period, Ms. Lopes conducted a total of 23 internal affairs interviews. Additionally, Ms. Lopes represented to the Court that she would respond to officer-involved shootings which could occur in the middle of the night. (Transcript page 734, line 1-12.) A review of her billing and calendar during her tenure at the Firm shows Ms. Lopes responding to two (2) officer-involved shootings, one in August 2023 and second in May 2024 prior to being retained on Wenger. Neither of these "roll outs' impacted her work on Wenger. Neither the Firm records, emails, calendars, nor Ms. Lopes' time entries and billings, reflect Ms. Lopes having responded to officer-involved shootings during the entire pendency of the Wenger matter.

11.  From the time that Ms. Lopes was retained to represent Mr. Wenger, I believe that she had the necessary time and support to prepare for her representation of Wenger. As noted, her case load was reduced, and other matters were covered by me to allow her time to work on the case, especially in the months before trial. I regularly checked on her to see how she was progressing, and I was under the impression that she had everything in hand. I believed that she was reviewing the discovery in the case because she discussed her findings with me. She discussed trial strategy with me. She kept me updated with rulings by the Court.

I am informed and believe, based on a review of Ms. Lopes' time records and her discussions with me, that in the weeks prior to trial Ms. Lopes spent most days meeting with her client, witnesses and her investigator preparing for trial. In the days leading up to trial, Ms. Lopes told me how well she was doing in court, including favorable rulings that she was receiving. I am informed and believe that Ms. Lopes' legal assistant checked on a daily basis to see what was needed for the case or what deadlines were approaching and sent reminders to Ms. Lopes. I understand that attorneys differ in how they prepare for trial, some prefer to work from home, others would rather be in the office environment. We allowed Ms. Lopes to work from home to prepare for trial and we believed that she was in fact working. I was not under the belief that she was overwhelmed with her preparation for trial. My review of the transcript granting the mistrial, which had been previously sealed, was not what I ever expected or understood to be the case. I was extremely surprised by the representations made by Ms. Lopes to the Court.

Dated: April 18, 2025				SEKI, NISHIMURA & WATASE, PLC


						By: *Bill H. Seki*
						     BILL H. SEKI