Kasey A. Castillo, Esq. [SBN 236690]
**KC LAW GROUP**
31566 Railroad Canyon Road
Suite 2, PMB 1123
Canyon Lake, California 92587
Telephone: (951) 364-3070
Email: kasey@kc-lawgroup.com

Michael D. Schwartz, Esq. [SBN 166556]
**THE MICHAEL SCHWARTZ FIRM**
3580 Wilshire Boulevard, Suite 1260
Los Angeles, California 90010
Telephone: (323)793-6735
Email: mds@themichaelschwartzfirm.com

*Attorneys for Defendant*,
DEVON CHRISTOPHER WENGER

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *Plaintiff*,<br><br>vs.<br><br>DEVON CHRISTOPHER WENGER,<br><br>   *Defendant*. | Case No.: 4:23-CR-00269-JSW<br>Hearing Date: June 23, 2025<br>Judge Presiding: Hon. Jeffrey S. White<br><br>**DEFENDANT DEVON CHRISTOPHER WENGER'S NOTICE & MOTION IN LIMINE TO EXCLUDE HIGHLY PREJUDICIAL COMMUNICATIONS** |

**TO:    THIS HONORABLE COURT AND ALL COUNSEL OF RECORD**

  **Please Take Notice,** that on the above date, time, and location or as soon thereafter as this matter may be heard, Defendant based on the attached memorandum of points and authorities, and any such additional evidence, whether written or verbal, that may be presented at the hearing will, and hereby do, move the Court *in limine*, before jury selection or commencement of trial, for an order that Plaintiffs be precluded from referring to, or using any pleading, testimony, remarks, questions or arguments which might inform the jury of the following facts or circumstances which are irrelevant and immaterial to Count Eight, to wit: 18

U.S.C. 242 – Deprivation of Rights Under Color of Law; which are unreasonably prejudicial and inflammatory, namely:

The text messages referred to within the Indictment, specifically but not limited to:

1. **No. 22 of the indictment** As an additional example, AMIRI, ROMBOUGH, and WENGER exchanged the following messages on April 21, 2019, about an individual in Antioch:

   **WENGER**:   Please find this guy and fuck him in the ass

   **ROMBOUGH**: Deal

   **WENGER**:   [IMG_0897, a screenshot of identification records] He's the fuck face that ran. Wants are 108 and 2800[1]

   **AMIRI**:      ill bite em

2. **No. 37 of the indictment** At about 11:20 a.m., AMIRI's K9 Purcy bit X.B. and ROMBOUGH assisted with X.B.'s arrest. After the arrest, AMIRI sent numerous individuals photographs, a video, and/or a description of the bite. At about 1:38 pm AMIRI and WENGER exchanged the following text messages:

   **WENGER**: Pics of [X.B.] please my dude!!! That bitch […] has talked so much shit to me! Thank you for biting that piece of shit!

   **AMIRI**: [IMG_1072; IMG_1067; IMG_1070; IMG_1066; IMG_1069]

   **WENGER**: You're my hero

3. **No. 40 of the indictment** On August 21, 2020, at about 11:23 p.m., AMIRI and WENGER assisted Agency-1 with the pursuit of a subject. AMIRI deployed K9 Purcy to bite the subject. About an hour later, at about 12:35 a.m., AMIRI and WENGER exchanged the following text messages:

   **AMIRI**: if [Agency-1] didn't have all those body cams and that was us… we would have fucked him up more. He didn't get what he deserved

   **WENGER**: I agree That's why I don't like body cams

   **AMIRI**: Emphasized "That's why I don't like body cams"

4. **No. 41 of the indictment** WENGER later sent the following messages at about 6:25 p.m. on August 22, 2020:

DEFENDANT DEVON CHRISTOPHER WENGER'S NOTICE & MOTION IN LIMINE TO EXCLUDE
HIGHLY PREJUDICIAL COMMUNICATIONS

**WENGER**: We need to get into something tonight bro!! Lets go 3 nights in a row dog bite!!!

**AMIRI**: Emphasized "We need to get into something tonight bro!! Lets go 3 nights in a row dog bite!!!"

**WENGER**: Lets get faggot ass [a lieutenant] something to stress out about lol

5. **No. 44 of the indictment** After the incident, AMIRI sent numerous individuals photographs, a video, and/or a description of the bite.

A. At about 8:47 p.m. that day, AMIRI sent WENGER multiple images of D.R. and his injuries, including the following:

    **AMIRI**:    [IMG_2619; IMG_2614; IMG_2617; IMG_2613]

    **WENGER**:    Home bot got lumped up!!!! Hahahah The [a corporal] special And the morty special.

    **AMIRI**:    bro we saw him laying in bed just acting like he was asleep. I walked out the tent and game planned how to fuck him up. Went back and did justice. Wish you were there. Inside a tent with no cams…you would have loved it. [Agency-2] agreed to keep cameras off

    **WENGER**:    Bro…fuuuuuuck yes!!! Fuck that nerd!! That's what fucking happens when you run, you acquire a tax. His tax was paid properly! Good shit bro

B. The conversation continued August 24, 2020, at about 11:26 a.m., with AMIRI Sending WENGER eight images of multiple subjects with injuries, including D.R.:

    **AMIRI**:    a very eventful work week. [Laughing Emojis]

    **WENGER**:    Hahahah FUCK YEAH BRO

    **AMIRI**:    let's fuck some people up next work week

    **WENGER**:    Bro Fuck the mother fucking yes

    **AMIRI**:    Loved "Fuck the mother fucking yes"

    **WENGER**:    Bite some nerds and crush some dweebs bro!

6. **No. 47 of the indictment** Later that day at about 8:06 p.m., AMIRI sent text messages on his personal cell phone to on-duty APD officers about M.Z., a transient individual in Antioch.

DEFENDANT DEVON CHRISTOPHER WENGER'S NOTICE & MOTION IN LIMINE TO EXCLUDE HIGHLY PREJUDICIAL COMMUNICATIONS

AMIRI wrote the following to the on-duty officers in a group text, including WENGER, Officer-7, and Officer-8, accompanied with photographs of M.Z.:

**AMIRI:** [M.Z.] anyone that finds him gets code.4 this fucker stole my mail and was trying to open accounts under my name.

7. **No. 48 of the indictment** Among responses in the group text, WENGER responded at about 8:12 p.m.

   **WENGER**:    Lets beat his fucking ass bro! I'm down after work morty

8. **No. 49 of the indictment** WENGER immediately then directly text messaged AMIRI:

   **WENGER**:    I'm serious bro, let's beat that dudes ass after work

   **AMIRI**:    !!!!

The matters of fact or alleged fact in the above-cited text messages, in addition to being unduly prejudicial and inflammatory to Defendant Wenger, are also irrelevant to Court Eight of the Indictment and otherwise objectionable, either under Federal Rules of Evidence 403, 404, 608(b) or some other provision of the law as set forth more specifically below. The Government should, therefore, be enjoined from seeking to utilize them during the trial, and the jury prohibited from considering them in determining the reasonableness of Defendant Wenger's use of force as alleged in Count Eight.

Respectfully submitted,

**KC LAW GROUP**

Dated: May 29, 2025

Kasey A. Castillo, Esq.
State Bar Number: 236690
31566 Railroad Canyon Road
Suite 2, PMB1123
Canyon Lake, California 92587
Telephone: (951) 364-3070
Email: kasey@kc-lawgroup.com

Michael D. Schwartz, Esq.
State Bar Number: 166556
THE MICHAEL SCHWARTZ FIRM
3580 Wilshire Boulevard, Suite 1260
Los Angeles, California 90010
Telephone: (323)793-6735
Email: mds@themichaelschwartzfirm.com

Attorneys for Defendant,
DEVON CHRISTOPHER WENGER

DEFENDANT DEVON CHRISTOPHER WENGER'S NOTICE & MOTION IN LIMINE TO EXCLUDE
HIGHLY PREJUDICIAL COMMUNICATIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant DEVON CHRISTOPHER WENGER ("Wenger") has been charged in Count One of the Indictment with 18 U.S.C. 241 – Conspiracy Against Rights and Count Eight of the Indictment with 18 U.S.C. 242 – Deprivation of Rights Under Color of Law. As it relates to the underlying motion specifically, 18 U.S.C. 242 Deprivation of Rights Under Color of Law purports the following:

> "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."

In terms of the above referenced indictment and charges, Wenger is alleged to have, while acting under color of law, willfully deprived an individual of the right, secured and protected by the Constitution and laws of the United States, to be free from the use of unreasonable force by a law enforcement officer, to wit: using force by shooting D.S. with a 40mm less lethal launcher. The offense involved the use, attempted use, or threatened use of a dangerous weapon and resulted in bodily injury to D.S.

### II.    ARGUMENT

**A. The Determination of Whether Reasonable Force Was Applied or Not Should Not Be Tainted with Highly Inflammatory and Prejudicial Text Messages, But Rather Should be Determined Solely by the Totality of the Circumstances Surrounding the Events at the Time They Occurred.**

1     Recently, the United States Supreme Court in the case of *Barnes v. Felix*, (May 15, 2025) 2025

2  U.S. LEXIS 1834; _S.Ct._; 2025 WL 1401083, held that: In resolving Fourth Amendment excessive

3  force claims under the Fourth Amendment, courts may not apply the so-called moment-of-threat rule

4  because that rule constricted the proper inquiry into the totality of the circumstances. *Barnes*, at HN 3.

5  To assess whether an officer acted reasonably in using force, a court must consider all the relevant

6  circumstances, including facts and events leading up to the climactic moment.

7     Specifically in the *Barnes* case, the issue was whether two seconds of review improperly

8  constricted the inquiry into whether the officer acted reasonably in his application of force. The Court

9  determined that because the two seconds was so limiting, "the lower courts could not take into account

10  anything preceding that final moment. So, for example, they could not consider the reasons for the stop

11  or the earlier interactions between the suspect and officer. And because of that limit, they could not

12  address whether the final two seconds of the encounter would look different if set within a longer

13  timeframe." *Barnes*, *supra*, at *3.

14     A claim that a law enforcement officer used excessive force during a stop or arrest is analyzed

15  under the Fourth Amendment, which requires that the force deployed be objectively reasonable from "the

16  perspective of a reasonable officer at the scene." *Graham v. Connor*, 490 U. S. 386, 396. The inquiry into

17  the reasonableness of police force requires analyzing the "totality of the circumstances." *County of Los

18  Angeles v. Mendez*, 581 U. S. 420, 427-428; *Tennessee v. Garner*, 471 U. S. 1, 9. That analysis demands

19  "careful attention to the facts and circumstances" relating to the incident. *Graham*, 490 U. S., at 396.

20     It is expressly stated that when assessing the determination of reasonableness, the fact finder

21  must consider the totality of the circumstances, ensuring that all facts are pertinent to the underlying

22  incident. In other words, the text messages included in the indictment and intended by the government

23  to establish conspiracy cannot be utilized in determining Wenger's guilt as it pertains to Count Eight of

24  the Indictment. In the present case, the incident at the heart of Count Eight of the Indictment was never

25  mentioned in any of the text messages cited above, not before the incident nor afterwards. Additionally,

26  neither Rombough nor Amiri participated in the incident regarding the arrest of D.S. In fact, neither

27  were even on duty. Moreover, Wenger's use of force can be argued to be in direct response to an order

28  from his sergeant at the scene, Sgt, Josh Evans, who is not a named co-conspirator. The arrest of D.S.

occurred literally ***more than a year*** after the last of the text message exchanges between Wenger, Amiri

---

6

DEFENDANT DEVON CHRISTOPHER WENGER'S NOTICE & MOTION IN LIMINE TO EXCLUDE
HIGHLY PREJUDICIAL COMMUNICATIONS

and Rombough. None of the texts cited as part of the alleged conspiracy involve use of a .40 MM less than lethal shotgun. Finally, the texts also are not relevant to an objective analysis into the reasonableness of the use of force but, to the contrary, would push the jury to make a subjective determination, in direct contradiction to *Graham v. Connor*, *supra*. Utilizing such evidence, therefore, would not only be prejudicial, violating Federal Rules of Evidence ("FRE") 403, but also, when considering the applicable, objective standard to be applied by the jury when considering Count Eight, is irrelevant and lacking probative value in assessing whether Wenger's use of force was reasonable in apprehending the D.S.

FRE 403 states that: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

A motion *in limine* is an appropriate tool to exclude inadmissible or prejudicial evidence before it is offered at trial. *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (quoting *Kelly v. New W. Fed. Savs*., 49 Cal.App.4th 659, 669 (1996), for the principle that motions in limine "avoid the obviously futile attempt to 'un-ring the bell'" once evidence is aired before the jury). Exclusion of the use of the inflammatory text is necessary here, where the evidence lacks any relevance and is highly prejudicial.[1]

It is respectfully submitted that the texts in question may not only constitute unfair prejudice but also have the potential to confuse and mislead the jury regarding which facts pertain to each count of the indictment. The introduction of this text evidence for Count Eight appears solely intended to incite the jury, as it has no place in the determination of the reasonableness of Defendant Wenger's use of force in relation to the incident or circumstances surrounding the events of October 26, 2021, giving rise to the

---

[1] Even if, arguendo, there was some minimal relevance to these communications, it would be far outweighed by the danger of prejudice. "Although relevant evidence is generally admissible, . . . '[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice. . ..'" *United States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012) (quoting Fed. R. Evid. 403). "Relevance is a fairly coarse filter, and when evidence is minimally relevant, it is likely to be minimally probative as well." Id. "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

DEFENDANT DEVON CHRISTOPHER WENGER'S NOTICE & MOTION IN LIMINE TO EXCLUDE
HIGHLY PREJUDICIAL COMMUNICATIONS

1   underlying charge in Count Eight. Especially given the facts that the text messages in question occurred

2   14-24 months prior to the underlying offense.  Therefore, the totality of the circumstances for review are

3   limited to the related incident. Any text messages unrelated to the underlying incident are irrelevant,

4   highly prejudicial, and must be excluded.

5

6   **B. The Objectivity Requirement to Determine Whether the Force Used by Wenger Was
    Reasonable Should Not Be Established by the Potential Subjectiveness of Jurors in Light
    of the Inflammatory Language Contained Within the Text.**

7

8        In California, a police officer is not guilty of assault when using force likely to produce great

9   bodily injury on a suspect who is resisting arrest, provided that the force used is reasonable and necessary

10  to overcome the resistance. The officer must be engaged in the performance of his duties, and the use of

11  force must be "objectively reasonable" under the circumstances. *People v. Olguin*, (1981) 119 Cal. App.

12  3d 39, *Lopez v. City of Los Angeles*, (2011) 196 Cal. App. 4th 675, *People v. Mehserle*, (2012) 206 Cal.

13  App. 4th 1125.

14       Courts of this jurisdiction, consistent with the holding in *Graham v. Connor, supra,* have

15  explained that "[t]he reasonableness of that use of force 'must be judged from the perspective of a

16  reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *People v. Perry*, (2019)

17  36 Cal. App. 5th 444. Courts also cite a need to recognize the "high deferential to the police officer's

18  need to protect himself and others." *Martinez v. County of Los Angeles*, (1996) 47 Cal. App. 4th 334,

19  343. In fact, the *Martinez* court went on to explain that courts, "must never allow the theoretical, sanitized

20  world of our imagination to replace the dangerous and complex world that policemen face every day,"

21  and must recognize that "[w]hat constitutes 'reasonable' action may seem quite different to someone

22  facing a possible assailant than to someone analyzing the question at leisure." *Id*. (quoting *Smith v.

23  Freeland*, 954 F. 2d 343, 347 (6th Cir. 1992).

24       In the Federal Jurisdiction, the objective reasonableness of any force used is judged using a Fourth

25  Amendment analysis which is to consider the relevant circumstances surrounding and leading up to the

26  use of force, as well as the level of force itself, such as: "the relationship between the need for the use of

27  force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to

28  temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably

1  perceived by the officer; and whether the plaintiff was actively resisting." *Demarest v. City of Vallejo*,

2  44 F. 4th 1209, 1225 (9th Cir. 2022). The *Demarest* court further held that "even assuming [the subject]

3  did not actively resist and did not present an immediate security threat" to the officer, the officer

4  "nonetheless could properly use a reasonable degree of force to take him into custody." *Id*. at 1226.

5  Further, when probable cause exists to detain and arrest a suspect, use of physical force

6  to overcome the resistance has been found to be reasonable. *Arpin v. Santa Clara Valley Trasp. Agency*,

7  261 F.3d 912, 921 (9th Cir. 2001). In *Arpin*, the suspect in that case "stiffened her arm when being

8  handcuffed" and attempted to pull free. *Id*.

9  In assessing the objective reasonableness of a particular use of force, the Courts consider: (1) the

10  severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount

11  of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity

12  of the intrusion on the individual and the government's need for that intrusion." *Rice v. Morehouse*, 989

13  F.3d 1112, 1121 (9th Cir. 2021) (internal citation and quotation marks omitted). In conducting this

14  "***objective analysis***", a court should not consider an officer's "intent or motivation." *Torres v. City of*

15  *Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (quoting *Graham*, 490 U.S. at 397) [emphasis added].

16  Just as a Court as a fact finder is not to consider an officer's "intent or motivation", so too are

17  the prospective jurors prevented such considerations. As the texts are irrelevant to an analysis of the

18  reasonableness of Wenger's use of force on October 26, 2021, the purpose of the texts can only be to

19  incite the jurors' emotions against the defendant.  Moreover, even an attempt to utilize the texts to

20  determine the motive or intent behind the force is in abrogation of the objective standard and, therefore,

21  the law.

22  This evidence, therefore, cannot be used to determine guilt for Count Eight as charged because it

23  lacks probative value, is irrelevant to assessing whether the physical force used was reasonable, and is

24  highly prejudicial. Such evidence would likely lead the jury to decide the ultimate issue of Count Eight

25  based on confusion, prejudice, and emotions rather than objective reasonableness.

26  ///

27  ///

28  ///

///

DEFENDANT DEVON CHRISTOPHER WENGER'S NOTICE & MOTION IN LIMINE TO EXCLUDE
HIGHLY PREJUDICIAL COMMUNICATIONS

### III.    CONCLUSION

For all the foregoing reasons, Wenger respectfully requests that the Court preclude any evidence of, inquiry into, or argument relating to the parties' use of objectionable language and that such terms be redacted in the Trial Exhibits and deposition testimony in which they appear referring to, or using any pleading, testimony, remarks, questions or arguments which might inform the jury of the following facts or circumstances which are irrelevant and immaterial to Count Eight.

Respectfully submitted,

**KC LAW GROUP**

Kasey A. Castillo, Esq.
State Bar Number: 236690
31566 Railroad Canyon Road
Suite 2, PMB 1123
Canyon Lake, California 92587
Telephone: (951) 364-3070
Email: kasey@kc-lawgroup.com

Michael D. Schwartz, Esq.
State Bar Number: 166556
THE MICHAEL SCHWARTZ FIRM
3580 Wilshire Boulevard, Suite 1260
Los Angeles, California 90010
Telephone: (323)793-6735
Email: mds@themichaelschwartzfirm.com

Attorneys for Defendant,
DEVON CHRISTOPHER WENGER

DEFENDANT DEVON CHRISTOPHER WENGER'S NOTICE & MOTION IN LIMINE TO EXCLUDE
HIGHLY PREJUDICIAL COMMUNICATIONS