# EXHIBIT 1004

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
AJAY KRISHNAMURTHY (CABN 305533)
ALETHEA M. SARGENT (CABN 288222)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Eric.Cheng@usdoj.gov
    Ajay.Krishnamurthy@usdoj.gov
    Alethea.Sargent@usdoj.gov

Attorneys for United States of America

FILED
JAN 14 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ERIC ALLEN ROMBOUGH, <br><br> Defendant. | CASE NO. 23-CR-00269 JSW-2 <br><br> **PLEA AGREEMENT** |

    I, Eric Allen Rombough, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written Plea Agreement (the "Agreement") pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

    1.    I agree to plead guilty to Counts One, Six, and Seven of the captioned Indictment charging me with Conspiracy Against Rights in violation of 18 U.S.C. § 241 (Count One) and

PLEA AGREEMENT
23-cr-00269 JSW-2
1
v. 09/03/2024

EAR-004291

EX 1004-001

1 | Deprivation of Rights Under Color of Law in violation of 18 U.S.C. § 242 (Counts Six and Seven).

2 | I agree that the elements of Conspiracy Against Rights in violation of 18 U.S.C. § 241 are as
3 | follows: (1) there was a conspiracy between two or more persons to commit at least one crime as
4 | charged in the Indictment (namely, to injure, oppress, threaten, or intimidate residents of Antioch,
5 | California and the Northern District of California in the free exercise or enjoyment of rights secured to
6 | them by the Constitution or laws of the United States, to be free from the use of unreasonable force by a
7 | law enforcement officer); and (2) I became a member of the conspiracy knowing of at least one of its
8 | objects and intending to help accomplish it.

9 | I agree that the statutory penalties of Conspiracy Against Rights in violation of 18 U.S.C. § 241
10 | are as follows:

| | | | |
|---|---|---|---|
| a. | Maximum prison term | | 10 years |
| b. | Maximum fine | | $250,000 |
| c. | Maximum supervised release term | | 3 years |
| d. | Restitution | | As determined by the Court |
| e. | Mandatory special assessment | | $100 per felony count; |

I agree that the elements of Deprivation of Rights Under Color of Law in violation of 18 U.S.C.
§ 242 are as follows: (1) I acted under color of law; (2) I acted willfully; and (3) I deprived a victim of a
right secured or protected by the Constitution or laws of the United States.

I agree that, if bodily injury results from the acts committed or if such acts include the use,
attempted use, or threatened use of a dangerous weapon, explosives, or fire, the statutory penalties of
~~Conspiracy Against Rights~~ Deprivation of Rights Under Color of Law 242 in violation of 18 U.S.C. § ~~241~~ 242 are as follows:

[handwritten margin initials: EL TB GN]

| | | | |
|---|---|---|---|
| a. | Maximum prison term | | 10 years |
| b. | Maximum fine | | $250,000 |
| c. | Maximum supervised release term | | 3 years |
| d. | Restitution | | As determined by the Court |
| e. | Mandatory special assessment | | $100 per felony count; |

I understand that I am pleading guilty to multiple violations and that the Court may order that my

PLEA AGREEMENT  2  v. 09/03/2024
23-cr-00269 JSW-2

1  sentence for each violation run consecutively.

2      2.     I agree that I am guilty of the offenses to which I am pleading guilty, and I agree that the
3  following facts are true:

4      I was employed as a police officer with the Antioch Police Department ("APD") beginning in
5  approximately 2017. During my time at APD, I served as an operator of the 40mm less lethal launcher.
6  I and other APD officers, including Morteza Amiri and Devon Wenger, received training at APD
7  regarding the use of force, de-escalation, crisis intervention, and other topics, including 40mm less lethal
8  training and qualification. The 40mm less lethal training covered relevant APD policies, nomenclature
9  and munitions, recommended target areas, announcements, documentation, and other topics. Among
10 other things, this training advised APD officers that certain areas of the body are "potentially lethal"
11 when targeted by the 40mm less lethal launcher, including the head, neck, chest, groin area, and portions
12 of the back and lower back. I stipulate and agree that the 40mm less lethal launcher is a dangerous
13 weapon.

14     Beginning no later than approximately February 2019 and continuing through approximately
15 March 2022, I knowingly and willfully conspired and agreed together with Amiri, Wenger, and other
16 APD officers, to injure, oppress, threaten, and intimidate residents of Antioch, California and the
17 Northern District of California in the free exercise and enjoyment of rights secured to them by the
18 Constitution or laws of the United States, that is, to be free from the use of unreasonable force by a law
19 enforcement officer.

20     As part of the scheme to violate civil rights, I communicated with Amiri, Wenger, and others
21 about actual and intended uses of force, including about specific violent acts that constituted excessive
22 uses of force by a police officer against individuals in and around Antioch. Specifically, beginning in or
23 about 2019, I discussed plans and intentions with Amiri, Wenger, and others to deploy excessive force—
24 specifically, more force than was reasonably necessary to accomplish any legitimate law enforcement
25 objective—and inflict bodily injuries to individuals in and around Antioch, including in the
26 communications identified in the Indictment. For example, in April 2019 Wenger messaged me and
27 Amiri with an image of an individual in Antioch stating, "Please find this guy and f[***] him in the
28

PLEA AGREEMENT                                   3                                    v. 09/03/2024
23-cr-00269 JSW-2

a[**] … He's the f[***] face that ran. Wants are 108 and 2800"; I responded "Deal" and Amiri responded "ill bite em". As an additional example, on February 8, 2021 Amiri messaged me, "[Wife] says she will purchase you a box of cookies if you 40 him," and I responded, "Done I'll 40 a few people this week." I deployed the 40mm less lethal launcher at a subject the next day.

As a further part of the scheme, I agreed with other APD officers, including Amiri and Wenger, to carry out such violent acts against individuals in and around Antioch even where the force was excessive, knowing that our actions constituted excessive uses of force by a police officer under color of law, including in the communications identified in the Indictment. In particular, we took any opportunity to find an excuse to deploy force against a subject, including at times where we knew that the force that we used was more than reasonably necessary to accomplish any legitimate law enforcement objective, knowing that this approach resulted in our deployment of constitutionally excessive uses of force that caused bodily injury and were unlawful and wrong. For instance, in December 2019 Amiri messaged me, "the guy i bit today was proned out. no f[***]s given. you don't take us on a high speed and rob people and gun point and crash into cars during a footbail and just give up... bite on"; I responded "Lol agreed."

As an example, while on duty at APD on May 5, 2021, I willfully deployed excessive force when I shot L.R. with a 40mm less lethal launcher during a patrol call regarding a residence in Antioch. Following my arrival at the residence, I learned that the call concerned trespassing, which is not a serious crime, by potential transients. From outside a room, I observed a male (L.R.) and female laying on a bed inside a room who did not respond to verbal commands. The male's hands were by his sides. Although I saw a bottle laying near L.R., I knew it was not an immediate threat to me but later referenced the bottle in my police report as an excuse to deploy the 40mm less lethal launcher. I nonetheless shot L.R. in the chest with the 40mm less lethal launcher, even though I knew deploying it at someone's chest could potentially be lethal, which knocked L.R. off of the bed and caused bodily injury to L.R. I knew that the deployment of the 40mm less lethal launcher was wrong, and was more force than was reasonably necessary to accomplish any legitimate law enforcement objective.

As an additional example, while on duty at APD on August 24, 2021, I willfully deployed

PLEA AGREEMENT  4  v. 09/03/2024
23-cr-00269 JSW-2

excessive force when I shot J.W. with a 40mm less lethal launcher while executing a search warrant at a residence in Antioch. I and approximately five other APD officers approached and surrounded a male occupant (J.W.) inside a bedroom, who was raising both of his hands while on top of a mattress. One officer stepped onto the bed and took one of J.W.'s raised arms to arrest him, and as the officer and J.W. leaned forward I immediately deployed the 40mm less lethal launcher at J.W. within 1 to 3 feet of him. My deployment struck J.W. along his side and lower back and injured him, even though I knew deploying the less lethal launcher at someone's lower back could potentially be lethal. After approximately seven seconds elapsed following the deployment of the 40mm less lethal launcher, another officer then repeatedly called out, "What's he reaching for." I do not recall actually seeing J.W. reaching for anything before deploying the 40mm less lethal launcher. I knew that the deployment of the 40mm less lethal launcher was wrong, and was more force than was reasonably necessary to accomplish any legitimate law enforcement objective.

As a further part of the scheme, I and other officers at APD, including Amiri and Wenger, agreed to, and did, deploy uses of force as "punishment" to subjects beyond any punishment appropriately imposed by the criminal justice system, and made repeated reference to or suggestion of "violating civil rights" (referring to violating the civil rights of individuals we encountered in the course of our APD duties). For example, Amiri referred to his canine deployments as, in sum and substance, the "the real punishment compared to the soft district attorney." I discussed and agreed with Amiri and other APD officers that our excessive uses of force exacted a desirable level of punishment on a subject, particularly where prosecutors might decide not to criminally charge the subject or a judicial official might decide not to detain the subject in custody.

As part of the scheme to violate civil rights, I communicated with other APD officers, including Amiri and Wenger, after specific deployments of excessive force and touted our applications of force, including in the communications identified in the Indictment. For example, following an incident in approximately October 2019 in which Wenger broke a young female subject's arm, Wenger touted his actions to me, stating something to the effect of "B[****] wouldn't do what I said." As an additional example, following Wenger's deployment of the 40mm less lethal launcher on a subject in

EAR-004295

EX 1004-005

approximately October 2021, Wenger likewise touted his actions to me, stating something to the effect of "You would've been proud of me."

As a further part of the scheme, I and other officers at APD, including Amiri, collected "trophies" following deployments of force on individuals in and around Antioch, and exchanged photographs of subjects' injuries. For example, following a 40mm less lethal launcher deployment in February 2021, I sent photographs of the injuries to numerous individuals, stating to one "And another one got 40d" and "Bro so much fun". Likewise, following Amiri's canine deployments, I received messages from Amiri's personal cell phone containing unofficial photographs he had taken of injuries his canine inflicted on subjects, such as in August 2020 in which Amiri sent me multiple images of a subjects' injuries and stated to me "what about an a[**] whoopin?". Through my conversations with Amiri, I became aware of Amiri's pride for having the most canine bites of all canine handlers at APD. As an additional example, following my deployments of the 40mm less lethal launcher, I collected spent 40mm munitions and instead of disposing or processing them, labeled them to memorialize the date and other details of the deployment, and kept them for myself to create a display on my mantle.

As a further part of the scheme, I and other officers at APD, including Amiri and Wenger, harbored and discussed racial animus and/or bias in relation to our police work, which impacted our approach to policing in an unlawful manner. For example, in February 2020, Amiri and I exchanged messages about "gorillas" in derogatory reference to Black people and I added, "I can shoot a few on Sunday."

As a further part of the scheme, I and other officers at APD, including Amiri and Wenger, authored police reports that contained false or misleading statements, or material omissions, to suggest that the force we used was necessary or justifiable, and encouraged one another to do so. In truth and in fact, and as we well knew, we willfully used excessive force in numerous incidents, including those identified in the Indictment. For instance, during a March 2021 arrest of T.A., I kicked T.A. in the head. I subsequently texted others that "my foot hurt[]" because I had kicked T.A.'s head "like a field goal" and "tr[ied] to kick [T.A's] head over the fence," and also referred to T.A. using a racial slur. I did not include this use-of-force in my police report, even though I was required to do so pursuant to APD

policy. I also became aware that Amiri added false statements to his police reports to provide better "justification" for his canine deployments, particularly in cases in which a deployment was actually unreasonable and inappropriate. Moreover, upon learning of each other's participation in incidents involving violent acts that constituted excessive uses of force, including as identified in this Indictment, I and other officers at APD, including Amiri and Wenger, declined to intercede or report the incidents to certain APD superiors, including as required by APD policies. Instead, we encouraged one another to continue the scheme to deprive the individuals in and around Antioch of their constitutional rights, including in the communications identified in the Indictment.

3. I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to:

a) Continue to plead not guilty and require the government to prove the elements of the crimes beyond a reasonable doubt;

b) A speedy and public trial by jury at which I would have the assistance of an attorney;

c) Confront and cross-examine adverse witnesses;

d) Remain silent and have no adverse inferences drawn from the decision not to testify;

e) Testify; and

f) Present evidence, pursue affirmative defenses, and have witnesses testify on my behalf.

I also agree to give up my rights to move to suppress evidence, raise other Fourth or Fifth Amendment claims, demand or receive further discovery from the government, and to challenge this prosecution on grounds of venue or statute of limitations.

4. I agree to give up my right to appeal my conviction, including constitutional challenges to the statutes of conviction. I agree to give up my right to appeal the judgment and all orders of the Court. I also agree to give up my right to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution, reserving only my right to claim that my sentence violated this

1 plea agreement, applicable law, or the Constitution. I reserve my right to claim that my counsel was
2 ineffective. I understand that this waiver includes, but is not limited to, any and all constitutional or
3 legal challenges to my convictions and guilty pleas, including arguments that the statutes to which I am
4 pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is
5 insufficient to support my pleas of guilty.

6     5. I agree not to file any collateral attack on my conviction or sentence, including a petition
7 under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was
8 ineffective.

9     6. I agree not to ask the Court to withdraw my guilty pleas at any time after they are
10 entered. In the event I violate any of the terms of the Agreement, I agree that the facts set forth in
11 Paragraph 2 of this Agreement and, if applicable, the fact that I made a sworn admission to them in a
12 previous court proceeding, shall be admissible against me in any subsequent proceeding, including at
13 trial. In any subsequent proceeding conducted after I violate any of the terms of the Agreement, I
14 expressly waive any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the
15 facts set forth in Paragraph 2 of the Agreement and, if applicable, the fact that I made a sworn admission
16 to them at a previous court proceeding.

17     7. I understand that the Court must consult the United States Sentencing Guidelines and
18 take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I
19 also agree that the sentencing range will be calculated by the Court and that other than joining in a
20 possible government downward departure pursuant to U.S.S.G. § 5K1.1, I will not ask for any other
21 adjustment to or reduction in the offense level or for a downward departure or variance from the
22 Guidelines range as determined by the Court although I reserve the right to seek a downward variance
23 based on the factors set forth in 18 U.S.C. § 3553(a). I understand that the government is free to oppose
24 any such request. I understand that regardless of the sentence that the Court imposes on me, I will not
25 be entitled, nor will I ask, to withdraw my guilty pleas.

26     8. I agree that regardless of any other provision of this Agreement, the government may and
27 will provide the Court and the Probation Office with all information relevant to the charged offenses and
28

PLEA AGREEMENT         8        v. 09/03/2024
23-cr-00269 JSW-2

EAR-004298

EX 1004-008

the sentencing decision, including Victim Impact Statements. I understand that the Court and United States Probation Office are not parties to this Agreement and are not bound by it. I also agree that, based on the nature of the offense, the Court should impose the following special condition of supervised release which is reasonably related to deterrence and rehabilitation:

> Special Condition (Searches)
> The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

9. I agree that I will make a good-faith effort to pay any fine, forfeiture, or restitution I am ordered to pay. I agree to pay the special assessment at the time of sentencing.

10. I agree to cooperate with the U.S. Attorney's Office before and after I am sentenced. My cooperation will include, but will not be limited to, the following:

   a. I will meet with the government when requested;

   b. I will respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury, or at any trial or other proceeding;

   c. I will provide all documents and other material asked for by the government;

   d. I will testify truthfully at any grand jury, court, or other proceeding as requested by the government;

   e. I will surrender any and all assets acquired or obtained directly or indirectly as a result of my illegal conduct; and

   f. I will request continuances of my sentencing date, as necessary, until my cooperation is completed.

11. I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e), as described in the government promises section below, is based on its sole and exclusive decision of whether I have provided substantial assistance and that decision will be binding on me. I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case. I also understand that the Court will not be bound by any recommendation made by the government.

12. I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement. I agree not to have any contact with any victims or witnesses in this case, either directly or indirectly, before and after I am sentenced. This includes, but is not limited to, personal contact, telephone, mail, or electronic mail contact, or any other written form of communication, and includes any harassing, annoying, or intimidating conduct by me directed to any victims or witnesses. I agree that the Court may also include this no-contact provision as a condition of my supervised release term. I agree that if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in the Government's Promises Section below, but I will not be released from my guilty pleas.

I agree to abide by all of the terms of my pre-trial release pending sentencing. However, I agree to be remanded to the custody of the United States Marshal at any time prior to my sentencing if requested by Pre-Trial Services, Probation or the government or as ordered by the Court.

13. If I am prosecuted after failing to comply with any promises I made in this Agreement, then (a) I agree that any statements I made to any law enforcement or other government agency or in Court, whether or not made pursuant to the cooperation provisions of this Agreement, may be used in any way; (b) I waive any and all claims under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule, to suppress or restrict the use of my statements, or any leads derived from those statements; and (c) I waive any defense to any prosecution that it is barred by a statute of limitations, if the limitations period has run between the date of this Agreement and the date I am indicted.

14. Understanding that the government has in its possession digital devices and/or digital media belonging to and seized from me, I waive any right to the return of digital data contained on those digital devices and/or digital media and agree that if any of these digital devices and/or digital media are returned to me, the government may delete all digital data from those digital devices and/or digital

1 | media before they are returned to me.

2 |     15. I agree that this Agreement contains all of the promises and agreements between the government and me, and I will not claim otherwise in the future. This Agreement supersedes any prior understandings, promises, or conditions between the government and me. No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

    16. I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

The Government's Promises

    17. The government agrees not to criminally prosecute the defendant for any additional violation known to the government at the time of this agreement that is related to the scheme charged in the Indictment. Defendant understands that this paragraph (1) does not provide protection from prosecution for criminal tax violations (including conspiracy to commit such violations), for which the government cannot and does not make any agreement, and (2) does not bar the use of such conduct as a predicate act or basis for a sentencing enhancement in a subsequent prosecution, including a prosecution pursuant to 18 U.S.C. § 1961 et seq. Defendant understands that the government is free to criminally prosecute defendant for any other statutory violations, other unlawful past conduct, or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that, at the time of sentencing, the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

    18. If, in its sole and exclusive judgment, the government decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure.

The Defendant's Affirmations

    19. I confirm that I have had adequate time to discuss this case, the evidence, and the

PLEA AGREEMENT                         11                         v. 09/03/2024
23-cr-00269 JSW-2

EAR-004301

EX 1004-011

Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

20. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

21. I confirm that my decision to enter guilty pleas is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated: 1/14/25

ERIC ALLEN ROMBOUGH
Defendant

ISMAIL J. RAMSEY
United States Attorney

Dated: 1/14/2025

ERIC CHENG
AJAY KRISHNAMURTHY
ALETHEA SARGENT
Assistant United States Attorneys

22. I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: 1/14/2025

ANTHONY BRASS
Attorney for Defendant

PLEA AGREEMENT
23-cr-00269 JSW-2

12

v. 09/03/2024